UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GAMEEST INTERNATIONAL NETWORK SALES CO., et al.,<br><br>Defendants. | Case No. 17-CV-02883-LHK<br><br>**ORDER DENYING MOTION TO DISMISS** |

Plaintiff Microsoft Corporation ("Microsoft") sues Defendants Gameest International Network Sales Co. and WeiWei Chu (collectively, "Defendants") for causes of action relating to Defendants' trafficking of stolen Microsoft Account ("MSA") credentials and virtual gaming currencies. Before the Court is Defendants' motion to dismiss. ECF No. 34. Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby DENIES the motion to dismiss.

**I.    BACKGROUND**

**A.    Factual Background**

Microsoft developed the Xbox video game console and two successor consoles, the Xbox 360 and Xbox One (collectively, "Xbox"). ECF No. 1, ¶ 18. Microsoft and third-party developers

sell various types of virtual gaming currencies, which are used to purchase a wide array of digital items associated with users' Xbox games. *Id.* ¶ 19. These virtual gaming currencies are deposited in users' MSAs. MSAs and their deposited virtual gaming currencies are personal to the user and their transfer or sale to third parties is not permitted. *Id.*

Defendants, who are citizens and residents of China, use their website to engage in the international trafficking of stolen MSA credentials and fraudulently obtained virtual gaming currencies for Xbox. *Id.* ¶ 1; *see also* ECF No. 6-5, Declaration of Jeremy Beckley ("Beckley Decl."), ¶ 7. Specifically, Defendants advertise on their websites that they sell virtual gaming currencies for Xbox games. Beckley Decl. ¶ 7. However, these virtual gaming currencies are offered at "suspiciously low prices." *Id.* Microsoft became aware of Defendants' websites in late 2016. *Id.* Microsoft's Senior Fraud Investigator, Jeremy Beckley made 6 test purchases during from December 5, 2016 to January 19, 2017 to confirm Defendants were trafficking in stolen MSA credentials and virtual gaming currency. See *id.* ¶ 8.

For example, in December 2016 Beckley supervised a $59.79 purchase of virtual gaming currency from Defendants' site. *Id.* ¶ 11. The list price to purchase a roughly equivalent amount of virtual gaming currency from Microsoft was $99.99. *Id.* Once Beckley made the purchase, Microsoft received an email containing log-in and password information for a "hijacked" MSA that was otherwise owned by an authorized account holder. *Id.* The authorized account holder's credit card was used to purchase and deposit two Xbox game bundles into the account. *Id.* Microsoft refunded the customer for the transaction after the customer complained that their account had been hijacked and the credit card had been used without authorization. *Id.* The other test purchases from Defendants yielded similar results. *See id.* ¶¶ 11–16.

Defendants have completed over $2 million in fraudulent purchases of virtual gaming currencies through this scheme. *Id.* ¶ 18. Microsoft has issued customer refunds or has received chargebacks from the credit card issuing banks for all of these unauthorized and fraudulent purchases. *Id.* Defendants also use Microsoft's registered trademarks on Defendants' websites to further and facilitate these fraudulent sales activities. *See* ECF No. 6-1 at 13–22 (Microsoft's

2

trademark registrations); Beckley Decl. at 14 (screen shot of Defendants' use of Microsoft's trademarks on their websites).

### B. Procedural History

On May 19, 2017, Microsoft sued Defendants in this Court. *See* ECF No. 1. Microsoft alleged six causes of action against all Defendants: (1) violation of Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961; (2) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(4) and (a)(6); (3) violation of the Lanham Act, 15 U.S.C. § 1051; (4) common law fraud; (5) conversion; and (6) unjust enrichment. *Id.* ¶ 6.

Concurrently with the Complaint, Microsoft filed an ex parte motion for temporary restraining order ("TRO"), expedited discovery, and authorization for electronic service of process. *See* ECF No. 6. More precisely, Microsoft requested a TRO to freeze Defendants' assets in the United States that derived from Defendants' illegal activities. *Id.* at 1. The Court granted Microsoft's motion the same day. In relevant part, the Court (1) authorized electronic service of process, (2) issued a TRO freezing Defendants' assets in the United States that derived from Defendants' illegal activities, (3) found good cause to extend the TRO through June 8, 2017, (4) set a preliminary injunction hearing for June 8, 2017, and (4) required Microsoft to post security in the amount of $10,000. ECF No. 11. Microsoft effected email service on May 26, 2017. ECF No. 23 at 3.

On June 7, 2017, the Court granted Microsoft's motion for a preliminary injunction, again requiring a $10,000 bond. ECF No. 28 at 11. The preliminary injunction ordered financial institutions providing services to Defendants to freeze Defendants' accounts, enjoined Defendants from the continued use of Microsoft's trademarks, and enjoined Defendants from any further interference with MSAs. *Id.* at 9–10. At that point, Defendants had yet to appear in the case, and Defendants did not file an opposition to Microsoft's motion. *Id.* at 1.

On June 26, 2017, Defendants filed a motion to dismiss for defects in service of process. *See* ECF No. 34. On July 10, 2017, Microsoft filed its opposition to the motion. ECF No. 39. On July 17, 2017, Defendants filed their reply. ECF No. 41.

3
Case No. 17-CV-02883-LHK
ORDER DENYING MOTION TO DISMISS

## II. LEGAL STANDARD

### A. Rule 12(b)(5) Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *see also Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (citing 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (3d ed. 2002 & Supp. 2003)). "[N]either actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (brackets omitted).

### B. Rule 60 Relief From a Judgment or Order

Defendants describe their motion as seeking relief under Rule 60, which empowers district courts to relieve "a party or its legal representative from a final judgment, order, or proceeding" for one of six enumerated reasons. Fed. R. Civ. P. 60. Yet Rule 60 does not apply to "judgments, orders, or proceedings that are not final decisions." *Meas v. City & Cty. of San Francisco*, 681 F. Supp. 2d 1128, 1143 (N.D. Cal. 2010); *see also United States v. Martin*, 226 F.3d 1042, 1048 (9th Cir. 2000) ("Rule 60(b), like Rule 59(e), applies only to motions attacking final, appealable orders").

Authorization of alternative service is not a final decision, it is an interlocutory order. District courts have "the inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment." *Meas*, 681 F. Supp. 2d at 1143. "In this judicial district, Civil Local Rule 7–9 provides a procedure whereby a litigant dissatisfied with an interlocutory ruling may seek leave to file a motion for reconsideration in this court." *Id.* The Court therefore construes Defendants' submission as a motion requesting leave to file a motion for

4

reconsideration of the Court's authorization of alternative service.

Civil Local Rule 7-9 specifies the requirements for such a motion. The moving party must show "reasonable diligence in bringing the motion" as well as one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b).

## III. DISCUSSION

Defendants contend (1) Microsoft's service of process did not conform to the requirements set forth in the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), to which the United States and China are signatories; and (2) Microsoft's service violated due process.

Below, the Court finds that (1) the Hague Convention did not govern Microsoft's service, and (2) Microsoft's email service comported with due process.

### A. The Hague Convention Did Not Govern Microsoft's Service

The Hague Convention did not govern Microsoft's form of service because Federal Rule of Civil Procedure 4(f) does not require conformance with the Hague Convention. Rule 4(f), which governs the international service of individuals, provides that individuals "not within any judicial district of the United States" may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>     (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>     (B) as the foreign authority directs in response to a letter rogatory or letter of

request; or
            (C) unless prohibited by the foreign country's law, by:
                    (i) delivering a copy of the summons and of the complaint to the individual
                    personally; or
                    (ii) using any form of mail that the clerk addresses and sends to the
                    individual and that requires a signed receipt; or
    (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. 4(f). Because Rule 4(f)(3) authorizes service that does *not* conform with the Hague Convention, service under Rule 4(f)(3) is permissible so long as it "is not *prohibited* by international agreement." Fed. R. Civ. 4(f)(3) (emphasis added).[1] Moreover, because Rule 4(h)(2) "authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f) for individuals," the procedures set forth in Rule 4(f) also apply to corporate litigants. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).

This Court's May 19, 2017 order, which authorized service on Defendants "by registered electronic mail to the unique email addresses used by Defendants," was consistent with Rule 4(f)(3). ECF No. 11 at 5. Thus, the Court rejects Defendants' contention that Microsoft's service was improper because the email service did not conform with the Hague Convention. Defendants' claim incorrectly assumes that the Hague Convention is the only means of effecting service.

On the contrary, Microsoft was entitled to, and did, effect service according to the terms of Rule 4(f)(3). For while Rule 4(f) allows service under Rule 4(f)(1), it neither prefers nor requires it: "By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." *Rio Properties*, 284 F.3d at 1015; *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011). Consequently, the decision to opt for Rule 4(f)(3) is "commit[ted] to the sound discretion of the district court." *Rio Properties*, 284 F.3d at 1016; *accord Microsoft Corp. v. Buy More, Inc.*, 2017 WL 2790693, at *3 (9th Cir. June 27, 2017).

Defendants attempt to avoid this conclusion by pointing to China's objection to Article 10 of the Hague Convention. The Hague Convention "requires each state to establish a central

---

[1] Since the Hague Convention is "an internationally agreed means," Rule 4(f)(2) is inapplicable here. The Court discusses it no further.

6
Case No. 17-CV-02883-LHK
ORDER DENYING MOTION TO DISMISS

authority to receive requests for service of documents from other countries." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017). When the central authority "receives an appropriate request, it must serve the documents or arrange for their service and then provide a certificate of service." *Id.* (internal citations omitted). However, Article 10 of the Hague Convention also permits service through means such as postal channels, provided the destination state (here, China) does not object. *Id.* China has objected, so Article 10 does not apply.

Yet China's objection to Article 10 does not prohibit the email service the Court ordered in the instant case. As this Court has noted previously, "numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies. This is true even in cases involving countries that . . . have objected to the alternative forms of service permitted under Article 10 of the Hague Convention." *Richmond Techs.*, 2011 WL 2607158, at *12; *see, e.g., In re LDK Solar Securities Litigation*, 2008 WL 2415186, at *3 (N.D. Cal. June 12, 2008) (permitting service of Chinese defendants under Rule 4(f)(3), despite China's objections to Article 10, because the service requested did not involve service by "postal channels"); *Williams–Sonoma Inc. v. Friendfinder Inc.,* 2007 WL 1140639, at *2 (N.D. Cal. Apr.17, 2007) (permitting service by email, but not by international mail, for defendants in countries that objected to Article 10 of the Hague Convention).

The Advisory Committee Notes to the 1993 Amendments to Rule 4(f) underscore the point. They state "that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service,' even if other methods of service remain incomplete or unattempted." *Rio Properties*, 284 F.3d at 1014 (quoting Advisory Committee Notes to the 1993 Amendments to Rule 4(f)). The situation described in Microsoft's May 19, 2017 motion for expedited discovery, temporary restraining order, and authorization for electronic service of process was urgent enough to warrant service under Rule 4(f)(3). ECF No. 6-2. The motion stated Microsoft had reason to believe Defendants would "funnel proceeds of their fraud through PayPal to foreign bank accounts held in China," and hence "as soon as Defendants learn about the existence of this lawsuit, they will repatriate all of their assets currently held in the United States to China to prevent them from

7

Case No. 17-CV-02883-LHK
ORDER DENYING MOTION TO DISMISS

being made available to satisfy an award for Microsoft in this case." ECF No. 6-2 at 17–18. Microsoft supported this assertion with a declaration from its Senior Fraud Investigator, Jeremy Beckley. ECF No. 6-5. The Court credited this representation, recognized the urgency of the situation, and thus its May 19, 2017 order authorized email service instead of requiring Microsoft to follow the time-consuming alternative approach of Rule 4(f)(1) and, by extension, the Hague Convention. ECF No. 11 at 5.

Defendants' subsequent behavior confirmed the situation's urgency. Three days after the Court authorized email service and granted a TRO on May 19, 2017, Defendant Weiwei Chu shifted almost $54,000 from his U.S. based HSBC account (which had not yet been identified and served with the TRO) to his Chinese account. ECF No. 39-1, Declaration of Bonnie MacNaughton, ("MacNaughton Decl.") ¶ 4.

The next question is whether Microsoft's service complied with Rule 4(f)(3). The requirements for service under Rule 4(f)(3) are that it "be (1) directed by the court; and (2) not prohibited by international agreement." *Rio Properties*, 284 F.3d at 1014; *In re LDK Solar*, 2008 WL 2415186, at *2; *see Richmond Techs*., 2011 WL 2607158, at *11–12. The Court's May 19, 2017 Order found "that [Microsoft] may complete service of process on Defendants by registered electronic mail to the unique email addresses used by Defendants . . . ." ECF No. 11 at 5. Microsoft then served Defendants at their unique email addresses by sending registered email through a third-party service, RPost, which "confirmed that all of these emails were received the same day and that the email service sent to gameest.com@gmail.com was opened." MacNaughton Decl. ¶ 3. Microsoft's service was therefore directed by the Court.

Nor was Microsoft's service "prohibited by international agreement." Fed. R. Civ. 4(f)(3). As noted above, Rule 4(f)(3) service is permissible when the Hague Convention applies, and even when the destination country has objected to Article 10. *Richmond Techs*., 2011 WL 2607158, at *12 (listing examples). Indeed, so long as service of process meets Rule 4(f)(3)'s requirements it may even "be accomplished in contravention of the laws of the foreign country." *Rio Properties*, 284 F.3d at 1014.

8
Case No. 17-CV-02883-LHK
ORDER DENYING MOTION TO DISMISS

## B. Compliance With Due Process

That leaves Defendants' claim that Microsoft's service violated due process. "Even if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process." *Rio Properties*, 284 F.3d at 1016. To meet that standard, "the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). As other courts in this district have noted, where defendants conduct commercial internet activities, email service is reasonably calculated to apprise them of the suit and thus comports with due process. *See, e.g., Facebook, Inc. v. Banana Ads, LLC*, 2012 WL 1038752, at *1–2 (N.D. Cal. Mar. 27, 2012) (authorizing email service on foreign defendants allegedly infringing Facebook trademark on websites). That logic holds especially true here given Defendants' vigorous efforts to conceal their identities—email was the most effective way to quickly provide the notice due process requires. Beckley Decl. ¶ 19–21.

The Court also notes that Defendants have had actual notice of the litigation since at least May 22, 2017. MacNaughton Decl. ¶ 2. Although Microsoft did not effect email service until May 26, 2017, Microsoft received an email from Defendants indicating that they were aware of the litigation on May 22, 2017. *Id.* On May 24, 2017, Defendants' counsel contacted Microsoft and represented that they had been retained to represent Defendants in this and related matters, and that Defendants did not intend to oppose entry of a preliminary injunction. *Id.* Moreover, third party RPost sent registered electronic mail to Defendants on May 26, 2017, and confirmed that all emails were received the same day, and that the email to gameest.com@gmail.com was opened. *Id.*¶ 3. Given that Defendants have known of this suit for almost five months, and declined to meaningfully participate prior to this motion to dismiss, the Court is unpersuaded by Defendants' claim that they have not received constitutionally adequate process.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Microsoft's service was properly effected

9
Case No. 17-CV-02883-LHK
ORDER DENYING MOTION TO DISMISS

under Rule 4(f)(3). The Court therefore denies Defendants' Rule 12(b)(5) motion to dismiss for defects in service of process. Insofar as the motion constitutes a request under Civil Local Rule 7-9 seeking leave to file a motion to reconsider, the Court also denies it because there has been no material change in law or facts, and Defendants have failed to point to any dispositive facts or issues the Court failed to consider. Civ. L.R. 7-9.

**IT IS SO ORDERED.**

Dated: October 10, 2017

_____
LUCY H. KOH
United States District Judge